UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE  DIVISION

| | | |
|---|---|---|
| MICHAEL COLE, ) | | |
|     Plaintiff, ) | | |
| ) | | |
| vs. ) | | 3:05-cv-106-RLY-WGH |
| ) | | |
| TOYOTA MOTOR MANUFACTURING, ) | | |
| INDIANA, INC., ) | | |
|     Defendant. ) | | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Michael Cole brings this case against his former employer, Defendant Toyota Motor Manufacturing, Indiana, Inc. ("TMMI" or "Defendant"), alleging that TMMI terminated his employment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.A. § 621 *et seq.*  He also alleges TMMI retaliated against him for asserting his rights under the Indiana Workers' Compensation Act, in violation of Indiana common law.

This matter now comes before the court on Defendant's Motion for Summary Judgment.  For the following reasons, Defendant's motion is **GRANTED**.

**I.     Summary Judgment Standard**

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

1

is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it is outcome determinative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "genuine" where the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

In determining whether a genuine issue of material fact exists, the court must view the record and all reasonable inferences in the light most favorable to the non-moving party. *National Soffit & Escutcheons, Inc. v. Superior Systems, Inc.*, 98 F.3d 262, 264 (7th Cir. 1996). While the moving party bears the burden of demonstrating the "absence of evidence on an essential element of the non-moving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-moving party may not simply rest on the pleadings, but "must affirmatively demonstrate by specific factual allegations that a genuine issue of material fact exists for trial." *Id.* If the non-moving party fails to make a sufficient showing on an issue for which he has the burden of proof, the moving party is entitled to judgment as a matter of law. *Ripberger v. Western Ohio Pizza, Inc.*, 908 F.Supp. 614, 617 (S.D. Ind. 1995) (*citing Celotex Corp.,* 477 U.S. at 323). "If, however, doubts remain as to the existence of a material fact, then those doubts should be resolved in favor of the non-moving party and summary judgment denied." *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989).

**II.     Facts**

1. TMMI is engaged in the business of manufacturing trucks, SUVs and minivans, and is located in Princeton, Indiana.

   **A.     TMMI's Policies**

2. TMMI has a number of policies intended to assist its employees (known as "team members") with injuries or resulting medical restrictions. One of these is called the Modified Duty Policy. Under this policy, if an injured team member's supervisor is unable to locate productive modified work within his/her group or section, the team member may be moved to another section or department where such work is available, or may be placed on a medical leave of absence. (TMMI's Modified Duty Policy, Defendant's Ex. A).

3. Under TMMI's Medical Leave of Absence ("MLOA") Policy, regular full-time team members are eligible for MLOA equal to their length of service or 24 months, whichever is less. Team members who have exhausted their full entitlement to MLOA but who are still unable to return to work are terminated. (TMMI's MLOA Policy, Defendant's Ex. B).

4. TMMI also has a Job Placement Committee ("JPC"), whose purpose is to attempt to locate available alternative positions for injured team members who, because of their work restrictions, are unable to return to their pre-injury position. The JPC does this by examining open positions on a plant-wide basis. Working within TMMI's established seniority system, the JPC attempts to locate alternative vacant

jobs for such team members for which they are qualified – both in terms of their physical capabilities and previous work experience, as well as having the requisite seniority to entitle them to the position. (Affidavit of B. Kerry Stepter ("Stepter Aff.") ¶¶ 2, 3).

### B.     Plaintiff Cole

5.  On June 14, 1999, Plaintiff was hired by TMMI as a production team member. At that time, he was 49 years old. (Deposition of Michael Cole ("Cole Dep.") at 10).

6.  On March 27, 2003, Plaintiff sustained a lower back injury caused by a malfunctioning sliding door jig. (Cole Dep. at 26-27).

7.  The following day, Plaintiff visited TMMI's on-site medical services provider, Industrial Health Services ("IHS"), complaining of back pain. (Cole Dep. at 30-31).

8.  He was examined, diagnosed with back strain, and was given the following temporary restrictions: (1) no bending at the waist, (2) no lifting over 20 pounds, and (3) no twisting. (Cole Dep. at 33; Cole Dep. Ex. 6).

9.  When Plaintiff returned to work, he was assigned modified duty consistent with his restrictions, in accordance with TMMI's Modified Duty Policy. (Defendant's Ex. A; Cole Dep. at 35-36, 44-45).

10. IHS referred Plaintiff to James E. Goris, M.D., of Orthopedic Associates, Inc., for an independent medical evaluation ("IME"). (Cole Dep. at 39; Cole Dep. Ex. 10).

11. On May 6, 2003, Dr. Goris diagnosed Plaintiff with a parascapular and lumbar

           strain, limited him to sedentary work only, and directed him to return for a follow-up visit on May 20, 2004.  (Cole Dep. at 47-48; Cole Dep. Exs. 10, 11).  Dr. Goris also referred Cole for an MRI.  (Cole Dep. at 50; Cole Dep. Ex. 12).

12. TMMI complied with Dr. Goris' recommendations by again providing Plaintiff with modified duty consistent with his restrictions.  This work, which Plaintiff performed through June 4, 2003, involved "[f]iling papers and doing computer work and basically going to the general store."  (Cole Dep. at 47-51).

13. On June 4, 2003, Plaintiff saw Dr. Goris following his MRI.  During this follow-up visit, Dr. Goris noted that Plaintiff's back pain had not improved, and that he had reached "maximum medical improvement," and he recommended that Plaintiff be indefinitely/permanently restricted from certain activities.  (Cole Dep. at 51-53; Cole Dep. Ex. 13).

14. Also on June 4, 2003, Dr. Goris issued a formal "Restriction Form" indicating the "maximum medical improvement" status and stating "indefinite/permanent restrictions: (i) no combined twisting/bending, (ii) limit bending/stooping to less than 33% of the time, and (iii) no lifting or carrying greater than 20 lbs."  (Cole Dep. at 53-55; Cole Dep. Ex. 14).

15. On June 5, 2003, TMMI determined there was neither modified duty nor any open production position available at that time that Plaintiff could perform within these indefinite/permanent restrictions and, therefore, placed him on MLOA.  (Cole Dep. at 57-59).

16. Plaintiff was also referred to TMMI's JPC which immediately commenced a plant-wide search for a suitable open position that Plaintiff could perform within these indefinite/permanent restrictions. (Stepter Aff. ¶ 4; Cole Dep. at 89-90, 140-41; Cole Dep. Ex. 22).

17. Dr. Goris re-evaluated Plaintiff's thoracic strain condition on November 25, 2003, and again on December 4, 2003. (Cole Dep. at 64-65, 67-68; Cole Dep. Ex. 16).

18. Dr. Goris affirmed the continued appropriateness of Plaintiff's indefinite/permanent restrictions issued on June 4, 2003. (Cole Dep. at 69; Cole Dep. Exs. 14, 16).

19. On July 12 and 13, 2004, Plaintiff underwent a functional capacity evaluation ("FCE") at Advanced Rehabilitation, Inc. (Cole Dep. at 96; Cole Dep. Ex. 18).

20. On the first day of the evaluation, Plaintiff reported that he still had "pain with lifting and twisting movements with heavy objects." He also reported that he felt "a slight pulling sensation in right side ribs during the sitting limitation test." On the second day, after being required to perform some lifting, Plaintiff reported "right side rib soreness rated three to four" on a scale of one to 10, as well as "pulling" and "tightness" in the same area; this was the very area that Plaintiff injured while at TMMI. (Cole Dep. at 114-16; Cole Dep. Ex. 18).

21. The "Significant Deficits" section of the FCE reported that Plaintiff had "minimal deficits." "The only deficit noted is with repetitive rotation in sitting and standing." (Cole Dep. Ex. 18).

22. Three IHS healthcare providers (a medical doctor, an osteopathic doctor and a physician's assistant) reviewed the results of Plaintiff's FCE in order to determine whether or not his indefinite/permanent restrictions could be modified. Thereafter, in a letter dated September 27, 2004, these healthcare providers informed Plaintiff that, based on the results of his two-day FCE, which demonstrated that Plaintiff was symptomatic in the same locations subject to the "indefinite/permanent" restrictions, his restrictions would remain the same. (Cole Dep. at 123, 125-29; Cole Dep. Ex. 20).

23. Dr. Goris, who was notified of the FCE at the same time, did not alter or amend Plaintiff's "indefinite/permanent" restrictions, and no other orthopedic doctor or medical doctor has issued any different restrictions. (Cole Dep. at 69, 75-76).

24. JPC was not able to locate a position for Plaintiff prior to the expiration of his two-year medical leave. (Stepter Aff. ¶¶ 5-7). Accordingly, his employment was terminated on June 5, 2005.

25. During the two-year time period during which the JPC was attempting to find another position for Plaintiff, it successfully placed 68 team members into open positions, nineteen of whom were substantially younger than Plaintiff. (Defendant's Response to Request for Production, Plaintiff's Ex. H).

### III. Discussion

#### A. ADA

Plaintiff alleges that TMMI terminated him because of a perceived disability, in

violation of the Americans With Disabilities Act, 42 U.S.C. § 12102 *et seq*. ("ADA").  In this case, Plaintiff does not have direct evidence of discrimination.  Therefore, he must employ the tripartite test articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Leffel v. Valley Financial Serv.*, 113 F.3d 787, 792-94 (7th Cir. 1997).

To state a prima facie case of disability discrimination, Plaintiff must show: "'(1) that she is disabled within the meaning of the ADA; (2) that her work performance met her employer's legitimate expectations; (3) that she was discharged [or was subjected to some other adverse employment action], and (4) that the circumstances surrounding [the adverse action] indicate that it is more likely than not that her disability was the reason for these adverse actions.'"  *Weigel v. Target Stores*, 122 F.3d 461, 465 (7th Cir. 1997) (quoting *Leffel*, 113 F.3d at 792-94).  If Plaintiff succeeds in making out his prima facie case, the burden then shifts to TMMI to articulate a legitimate, nondiscriminatory reason for terminating Plaintiff.  *Leffel*, 113 F.3d at 792.  If TMMI does so, the burden then shifts to Plaintiff to establish that TMMI's reasons are a pretext for discrimination.  *Id.*  The court will begin with the threshold issue: whether Plaintiff was disabled within the meaning of the ADA.

Title I of the ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

42 U.S.C. § 12112(a) (Supp.1995). A "qualified individual with a disability" is defined by the ADA to mean "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

The term "disability" is defined under the ADA to mean, with respect to an individual:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). To fall within the statutory definition of prong (C) above, a plaintiff must show that "a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities." *Sutton v. United Airlines, Inc.*, 527 U.S. at 489 (1999); *Mack v. Great Dane Trailers*, 308 F.3d 776, 780 (7th Cir. 2002). The purpose of the "regarded as" prong is to prohibit employers from making ill-informed decisions based on myth or stereotype. *Sutton*, 527 U.S. at 489 (citing *School Bd. of Nassau City v. Arline*, 273 U.S. 284 (1987) ("By amending the definition of 'handicapped individual' to include not only those who are actually physically impaired, but also those who are regarded as impaired and who, as a result, are substantially limited in a major life activity, Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the

physical limitations that flow from actual impairment")).

Plaintiff's claim is that he is regarded as being substantially limited in the major life activity of working. 29 C.F.R. § 1630.2(i). With respect to the activity of "working," an individual must be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Toyota Motor Mfg, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002), citing 29 C.F.R. § 1630.2(j)(3). Plaintiff has failed to produce evidence on this requisite showing; nor has he attempted to do so. Rather, he bases his regarded as claim on TMMI's refusal to modify Dr. Goris' indefinite medical restrictions.

In this regard, it is important to note that Plaintiff's indefinite restrictions were not placed on him by TMMI, or even its on-site medical services provider, IHS. Instead, they were placed by Dr. Goris, an orthopedic specialist, to whom Plaintiff had been referred by TMMI for an independent medical evaluation. (Cole Dep. at 39, 45; Cole Dep. Ex. 10). While Plaintiff argues that he did not agree with Dr. Goris' assessment of his back condition, given the results of the FCE, he does not argue that Dr. Goris was unqualified to make the assessment he did, nor that any other qualified medical doctor made a contrary assessment. More importantly, TMMI was entitled to rely on the medical restrictions imposed by Dr. Goris, a qualified orthopedic specialist. *See, e.g., Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir. 1995) (employer's perception of plaintiff's impairment was based on restrictions imposed by plaintiff's own doctor; accordingly, plaintiff had not demonstrated that employer "regarded" him as disabled); *Rebarchek v.*

10

*The Farmers Cooperative Elevator and Mercantile Ass'n*, 60 F.Supp.2d 1145 (D.Kan. 1999) (employer's perception of plaintiff's capabilities was based on restrictions imposed by plaintiff's own doctor; accordingly, court rejected plaintiff's "regarded as" claim).

Even if Plaintiff could establish that he has a "disability" under the ADA, he must still show he is qualified for the position he holds or desires. 29 C.F.R. § 1630.2(m). By his own admissions, Plaintiff cannot make this showing. Plaintiff acknowledges that the indefinite/permanent restrictions placed on him by Dr. Goris were never modified or lifted. (Cole Dep. at 69, 128). He also admits that he could not have resumed his former job duties as long as those restrictions were in place. (Cole Dep. at 87, 92-93, 160-61). Finally, he admits that he is not aware of any other available job that he could perform within those restrictions. (Cole Dep. at 91).

In short, the evidence reflects that Plaintiff's termination resulted from TMMI's uniform application of its neutral leave of absence policy. Accordingly, Plaintiff's claim that TMMI "regarded" him as disabled is unsupported as a matter of law.

**B.    ADEA**

To state a prima facie case of age discrimination, a plaintiff must show: (1) that he is a member of a protected class; (2) that he was otherwise qualified for his position; (3) that he suffered an adverse employment action; and (4) that he was treated less favorably than persons not in the protected class. *See, e.g., Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000).

As stated above, Plaintiff cannot demonstrate that there was an available position

for which he was qualified with his indefinite/permanent restrictions.  Moreover, Plaintiff admitted that he had no reason to doubt that the JPC was, indeed, diligently searching for an available job for him the entire 24 months he was off work on medical leave.  (Cole Dep. at 140-41, 143-44, 149, 165, 184-85).

Finally, Plaintiff failed to show that he was treated less favorably than a similarly situated employee who was substantially younger than he.  Indeed, Plaintiff was 49 when he was hired at TMMI, and the majority of the individuals on MLOA leave who were placed within the two-year time limitation were in fact older than 40 years of age.  *See Horwitz v. Board of Educ. of Avoca School Dist. No. 37*, 260 F.3d 602, 611 (7th Cir. 2001) (where majority of teachers were over the age of 40, court found plaintiff was not treated less favorably than those teachers under the age of 40).  Accordingly, Plaintiff's age claim fails as a matter of law.

**C.     Frampton Claim**

In his Response, Plaintiff conceded that he does not have sufficient evidence on his claim that he was retaliated against for filing a workers' compensation claim.  Accordingly, Plaintiff's Frampton claim fails as a matter of law.

**IV.     Conclusion**

For the reasons set forth above, the court finds that Plaintiff's ADA, ADEA, and Frampton claims are unsupported as a matter of law.  Therefore, the court **GRANTS** Defendant's Motion for Summary Judgment.

**SO ORDERED** this  13th   day of September 2006.

                                                                      _____
                                                                      RICHARD L. YOUNG, JUDGE
                                                                      United States District Court
                                                                      Southern District of Indiana

Electronic Copies to:

John H. Haskin
HASKIN LAUTER LARUE & GIBBONS
jhaskin@hlllaw.com

Andrew G. Jones
HASKIN LAUTER LARUE & GIBBONS
ajones@hlllaw.com

Craig Peter Siegenthaler
GREENBAUM DOLL & MCDONALD PLLC
cps@gdm.com

Jerry D. Stilwell
BAMBERGER FOREMAN OSWALD & HAHN
jstilwell@bamberger.com